May it please the Court, my name is Matt Buckmiller and with me is my law partner, Joe Frost, and we represent M.D. Russell Construction. The trial court erred by granting summary judgment in favor of the defendants with respect to all of plaintiff's claims, as well as with defendants' counterclaim for breach of contract. The Court, in entering summary judgment, disregarded the standard for summary judgment, which is to take all of the inferences and facts in the light most favorable to the non-moving party. There are five legal issues for the determination, or for this Court to determine. The first is to determine what choice of law should be applied. And there are three different analyses that need to take place. The first is, is what is the choice of law that is applicable for a Chapter 75 claim under North Carolina law, which is not a tort claim, is not a quasi-tort claim. It is su generis, it is a creation of statute. And the plaintiffs argue that the most significant relationship test should apply. The defendants argue that the Lex Loci test should apply. There is no dispute that if Lex Loci applies to the Chapter 75 claim, that Virginia does not have a similar statute as the North Carolina statute under Chapter 75, so that claim would go away. So where did you tell the District Court that the significant relationship test should apply? Not that it just existed, but that it should apply. Your Honor, I believe that was in, and I don't have the pages in front of me, I can get that to you on rebuttal. But I believe that was in pages 12 through 13 of our brief. Now, what complicated this case from the inception was that the defendants filed a motion to dismiss the claims of the plaintiff. And in that motion to dismiss, they claimed that North Carolina law applied. So for nearly two years, the parties, or at least we, proceeded along the lines that North Carolina law was being applied to all of the claims, because we hadn't heard anything otherwise. And then at summary judgment, for the first time in the case, the defendants took the position that other state laws applied. And my position is that the choice of law analysis really only applies or affects the Chapter 75 claim. All of the tort claims, whether it be for fraud or negligent misrepresentations, the law in Virginia and the law in North Carolina are incredibly similar with respect to that. There's an illusion in the court's order at summary judgment that Virginia does not have a reckless consideration in terms of intent for a fraudulent misrepresentation. And that is not the case. With respect to which claim? Well, any of the tort-like claims. Where do you say, well, if North Carolina law applied, it would be different than what you, District Court, decided? Sure. So the first element of our claims deal with the pre-contract formation. And what the evidence demonstrated was that there was a misrepresentation by the defendant that the base rate of $23.55 would include overtime. And that induced the formation of the contract. After the contract was signed, and the contract is two pages, it's very easy to read, it doesn't mention anything about overtime either way. It doesn't say that we're required to pay overtime. It doesn't say they're required, the defendants are required to pay overtime. It's completely silent on that issue. And just to go a little bit afield here with that breach of contract analysis, the judge basically decided as a matter of law that the contract required us to pay overtime, despite there being absolutely no language in the contract. I didn't think there was a dispute over the application of North Carolina law to the contract claim. There's not. I was just trying to get that point in in terms of the application of the breach of contract analysis dealt with the court finding as a matter of law at summary judgment that the contract required us to pay for overtime. What I'm looking for is where you argued to the District Court on any of these twerk-like claims, if you had applied North Carolina law, it would have been different, and here's why. Because I haven't, I'm not finding that. Well, Your Honor, we have maintained from the beginning of the case that the defendant committed fraud, and we have stated in the record that but for the representation as to this base rate, including overtime, that we would never have entered into the contract. Your fraud claims are really two-part. One is fraud in the inducement, and then two is fraud during the performance of the contract with respect to the billing. If I'm understanding it right? That's correct. Our main focus is the fraudulent inducement aspect. We'll focus first on Virginia. Is there any Virginia case law that says there can be a negligent misrepresentation that allows for the formation of a, that allows for a fraud in the inducement claim? No, it would need to be a negligent misrepresentation, and Virginia does not have a negligent misrepresentation claim. They call it constructive fraud. Correct, but the elements are the same. But is there any Virginia case law that allows a constructive fraud element to go to fraud in the inducement? There is. I think I understand the question. There are a fraudulent misrepresentation does not have to necessarily be with intent. It can also be reckless. And so what the court found is that the representation of this includes overtime needed to be intentional. And the Virginia case law says it can also be made recklessly. And either of those issues are issues for a jury to determine. Now, the defendant denies that a statement was ever made to that effect. So where is the evidence in the record that the C-INTER requirement, whether it be intentional or reckless, was made by the staffing company? Well, again, Your Honor, the intent of the staffing company, they're never going to come out right and say we intentionally misrepresented things to you. So a lot of the inferences there are that, one, the representation was made at the time of the representation. The evidence was from the testimony of Ms. Creech was that she didn't know whether that statement was true or not, or she did not even have authority to make that statement. But we were entitled to rely on whatever statement that she made. And then in the performance of the contract for the first at least four or five billings, they contained overtime rates that are plain and obvious on the billing sheets, and your company paid. Correct. Now, but after the discovery of this overtime issue, the evidence demonstrated, and this is from the testimony of Mr. Russell, was that there was a discussion between the appellant and the appellee, and he said, well, we'll keep on working, but we want to go back and see if these payments were rightfully made. So they reserved, not discounting that they actually made the payments initially, but once they discovered this issue, they're saying we're not going to pay anything more onto this and we're going to have to have a discussion at the end of the day, because the primary concern was doing the work, discussion at the end of the day to say here's what we owe and here's what we don't owe. And that issue was the reason why the base rate for the two other states, Florida and I'm forgetting the other state right now, were reduced. So under Virginia law, doesn't the RMA case control as to whether there's fraud in the billing, whether it be intentional or negligent misrepresentation? If we're talking about the second aspect of the fraud claim? That's correct. Correct. And then I think that would limit the recovery under the fraud claim for that second aspect. But again, our focus is on the initial fraudulent inducement issue. And I will just revert back to Chapter 75 under North Carolina law, which does not require a predicate violation of any common law. The whole point of the statute called the Mini-FTC Act was to provide a remedy which the common law did not provide. So the issues with intent, scienter, reliance, all of those issues are not issues that are required for a Chapter 75 claim. The representation can be made in good faith. It can be made innocently. Under Chapter 75, that doesn't matter. You don't have to prove fraud in order to have a Chapter 75 claim. And our Chapter 75 claim focuses on the initial inducement and then the actions after the contract was formed. And under the law in North Carolina, you have to show substantially aggravating circumstances attendant to the breach of the contract. And what we have here are forged timesheets. What we have here is the attempt to collect on a debt, which they're saying is $38,000, even though under the evidence in the most favorable to us, $25,000 of that amount was assigned. And that's according to the 30B6. $25,000 was what? Was assigned to a third party, Co-Face. And that was the evidence that was, and this is in our brief, that was the evidence that was obtained in the 30B6 deposition of the appellee. So what's your best evidence of fraud? It's the misrepresentation. Sorry, sir? What's your best evidence of fraud with regard to these timesheets? That there was no, that our employees, our employees, not the other, not CSI's employees, ever signed any of the timesheets. And that someone, either the temporary employees or someone else from CSI signed them. So that's the evidence. And that was why a criminal investigation was. The record's not clear as to whether those timesheets were provided along with the billing statement. Did your client get the timesheets at the time they received the billing statements? I would have to check on that, Your Honor. I'm not entirely sure. No. My counsel is telling me no, that that was not obtained. But the issue with respect to the contract is that the district court judge just wanted to pigeonhole the breach of contract to where we got the money. And where their bank account was and where our bank account was. And that was why they based the decision to apply Virginia law and Tennessee law as to the conversion claim. But our breach of contract claim was not limited solely to our payment of money to them. There were other issues. There was them doing the work poorly, which we alleged causes $13,000 of damages. We provided evidence that they billed for work not done. The timesheets weren't verified, which pursuant to the contract, raises an issue as to whether the work was done or not. So it appears your sites in the brief that go to the record are essentially your interrogatory answers that you're relying upon as the evidence that creates a material issue of dispute. Right? Along with our deposition testimony and the nature of the forged timesheets. It gets into a situation where they say they did the work. We say we didn't. Or that they didn't. And we've shown evidence that the timesheets were forged, or at least there's an issue of fact. Where do you say that the work on the timesheets was not done? Sir? Where do you say, what's your representation to the district court that the work represented on these timesheets that you say weren't signed was not work that was actually performed? We have no, the contract requires that the timesheets be verified. Right. I understand that. But what I'm asking is slightly different. Is that even though they may have been unsigned, have you argued that the work was not done? We have argued it. But in terms of the actual evidentiary proof, we just don't believe it was done. Because we can't verify something that doesn't exist. Well, I mean, is there an affidavit or testimony from somebody that the 15 hours on such and such a date that we were billed for never happened? Your Honor, I believe that there is. And we will get the specific deposition site for that during the break. So as it relates, Your Honor, to, if I could just focus on the most significant relationship test and the choice of law test as to Chapter 75. This Court has on five separate occasions applied the most significant relationship test to Chapter 75 claims. They've also, this Court has also applied it to fraud claims, negligent delay claims, and tortious interference with contractual relations claims. What the appellee argues is that the law of Virginia should apply because that is the last act giving rise to the injury, based solely on our client being located there and the bank account being located there. Counsel, I think I indicated at the beginning, maybe you can help me with this once you come back up. I see that you argue that there are two tests. But I don't see that you argued that the significant relationship test applies or why it would. Your Honor, I will have the exact site on that, but I believe it was pages 12 and 13, pages 12 and 13 in our brief with the trial court. I did find my site on that. So in the P&L development case, which I believe is the Middle District of North Carolina, they gathered all the most recent cases, at least in federal court, that dealt with the choice of law issue under this. And they all post-date, I think they all, if not most of them, post-date the cases that you cite. And they all applied the Lex Loci case test, did they not? I believe that's generally correct. Finally, that's the trend, at least in federal courts, with respect to this issue. Your Honor, what I would say to that is each case is different. In this case, we have a situation where Virginia and Tennessee have literally no interaction and relationship with this case. The contract, all of the invoices, all of the work was performed in North Carolina. And the case, the Edmondson case that is I think the court's most recent case on the most significant relationship, provides that if there's an issue, if multiple states' law could apply, then the most significant relationship test should be applied. And I'm out of time. Thank you. Thank you, Mr. Buckmiller. Your Honor, Mr. Henson. Good morning. May it please the court. Philip Henson on behalf of Consolidated Staffing, Incorporated. I'm grateful to be here today. Thanks for your time. Frankly, this is a simple dispute. It's centered on a simple contract. It's a two-page contract. And it doesn't contain all of the things that M.D. Russell would like it to contain to justify their unwillingness to pay my client in full for the labor that my client provided. Mr. Henson, am I correct? Am I correct that you said this is simple because in your brief, you state that the bill rate in those two pages is expressed as what you would do for the amount of money, the bill rate, $17.55, correct? There was a change. That was original, correct? Correct, Your Honor. And then the only change you said was that it went to $20 in some sense, $23 in some sense, right? That's correct, Your Honor. And you said because of that, you don't need any parole evidence in terms of what may have occurred and spoken between the parties as to whether or not it included overtime, right, because overtime is not in the paragraph that describes what's provided for consolidated staff. Is that right? That's correct. There would be no need for parole evidence to be applied here. Well, tell me this then. On page five of your brief, in that paragraph where you describe, you said the hourly bill rate for labor is $17.55, and the bill rate covered the following. Tell me in there where it says it covers regular time. I believe it's just understood, Your Honor. Oh, it's understood? Well, that's the whole point. They're saying it's understood that it did cover overtime, so you can't have it both ways. You're saying that it's precluded oral parole evidence because it's not in there, but yet it doesn't even express in here that you're entitled to provide regular time. So you say it's understood? It's a simple contract for labor, Your Honor. It's a simple contract to say, listen, if you give me a flat rate in terms of billing rate, it ought to include your overtime. Isn't it your client's business to provide temp service? It is my client's business, Your Honor. I can't believe it. It's hard to understand. This is the first time you had a situation where you had to determine whether or not overtime would be in your bill rate, and it may be, but you don't put it in there at all. It's simply not there, Your Honor. No, it's not there. That's why we have trials, maybe, and not summary judgments. Well, perhaps, but the course of performance in this case was such that it was understood that overtime would be paid. That's a factual question. That's a factual question. Because in reading, unless there's some procedural bar, which there may be, how does one tell when looking at this contract whether or not it includes overtime? Because it seems like you could make two reasonable readings, one that it did, one that it didn't. You simply don't know. Your Honor, the contract covers payroll. Payroll would encompass overtime. Payroll encompasses regular time. It encompasses overtime. It encompasses the things that constitute payroll. It's, frankly, that simple. And that's how the parties proceeded. But they were not your employees. They were your employees. They were not the construction company's employees. We supplied these temporary, yes, the temporary laborers would be the employees of my company. Frankly, it could be a joint employment situation if you wanted to get more technical. On the FLSA, perhaps. But legally, your company's obligated to pay overtime. Yes, my company is obligated to pay overtime. That's what the Fair Labor Standards Act requires, Your Honor. All the more reason why you put it in the contract. It's covered. It's that you get to be reimbursed under your bill rate. The absence of the term overtime in the contract doesn't, that should not create a dispute of, a genuine dispute of material facts. But here it does. We address payroll. I know you do, but here it does. You know, it's an old maxim that says the law won't do for you what you won't do for yourself. I mean, it's your business. It seems to me, absolutely, that's like, to me, one-on-one temp service. It will include regular time and overtime, or if it only is regular time and the rate will go up according to, based on, as needed, what constitutes overtime. I mean, that's a simple sentence or two sentences. Well, of course, it doesn't say regular time either. That's my whole point. That's why I started that way. You have to go beyond the four corners of the document, but you want to close the door there and say, oh, course of conduct, that's as far as we'll go. But once you open that door, you can't just close it for your benefit. It's open for everybody in terms of what the truth is based on the facts in question. And we're here on summary judgment. I believe, Your Honor, that overtime is, it's simply understood that that was what we were, that as this relationship developed, as we sent invoices to M.D. Russell, they were paid without question. They contained obvious overtime charges in them. There was an initial offer of a contract with a bill rate of $17.55, Your Honor. There was an inquiry from M.D. Russell in between the formation of that $17.55 contract for the labor rate to the $23.50 labor rate contract the next day. There was an inquiry by M.D. Russell as to, I didn't see anything about overtime in that contract. The same language persisted. But that doesn't help you, in my view, because the question specifically said, wait a minute, what about overtime? It's not in here. And then you respond by not explanation or not telling them what you're now telling us. Instead, you increase this amount. I think a fair reading is, oh, that's how we'll do it. We'll give you more money per hour, and therefore that will cover your inquiry. Why is that not a reasonable conclusion to make from your inquiry? No, their inquiry and your very terse response in terms of including that, that seems to be, I don't see how we can take judicial notice of that. And that couldn't be meaning that it's, that that includes overtime. Your Honor, I believe the overtime inquiry was resolved by the language staying the same and the parties proceeding down the path of us providing, my client providing labor, obviously invoicing for overtime, it being paid without question until the very end. There were a series of invoices paid. So did the owner of M.D. Russell raise the issue during the performance of the contract? No. Before the last invoice? No. It was not raised until the last invoice. Or is that a dispute? Among the other myriad of issues that were raised. Or is that a dispute of fact, because M.D. Russell points to deposition testimony saying that it was raised and that we're going to address these issues at the end. We need to keep working and we need to keep our, your laborers on the job. No, I don't believe that's a dispute of fact. I believe that the contractual language. That's a different question. Not what the contractual language is. The question is, after you began performing under the contract, was it raised with your company that overtime is not supposed to be included or we may have some issues with respect to billing, but let's get the work done and we'll work it out at the end. No. It was not raised until the last invoice. And it was raised among a myriad of other issues that were brought to the forefront for purposes of avoiding paying a final invoice. That was what was going on here. Plain and simple. That's your response to their facts that they say? All efforts to be drawn in whose favor? Yours or theirs? Well, we have cross motions for summary judgment here. So the underlying record involves cross motions for summary judgment. So inferences would be drawn in favor both ways. And Judge Boyle looked at this in great detail. We're not talking about the details of the court. Judge, we're talking about what we left here. They say that they noticed it, but Judge Ballou just said it. These are disasters type things and we've got to get moving. Damages and people are waiting. It's all kind of issues. We can't stop in the middle and do this, but we'll get this straight later. That was their understanding. Now you disagree with that, which is fair enough. But that's quite plausible. There's nothing out of the ordinary of that being a response, particularly the exigency of the work you were doing. You agree it was, right? This is storm kind of cleanup type stuff? This was storm cleanup work after a hurricane, Your Honor. Absolutely. That's an exigency. FEMA comes in and all kind of things and people, Red Cross. I mean, so the milieu of the work you were doing, it speaks to exigency. So it's not unusual to say, yeah, let's get going. Let's get these people back in their home. Let's get this thing. But in the meantime, later on, we'll take care of this because our understanding was this overtime was already paid for at that rate. So right now, let's get this done and we'll take care of it. That's nothing unreasonable. I mean, I should say out of the ordinary to be in response given the circumstance of the case. Because, you know, text without context normally doesn't get you very far. But the problem is that – and I'm not doubting what you say. I'm not a trial fact here. None of us are. This is an appellate court. We don't try cases in that sense. In that summary judgment, that should all be over. But it seems like a lot of the situation. Even questions about, you know, misrepresentation about those things. We can't make those conclusions and we don't. But I believe, Your Honor, there's no evidence here of misrepresentation, for example. But – and I think to Judge Gregory's point, this is a course of conduct over about two months, if I remember correctly. Two to two and a half months. Isn't there evidence in the record that there is a dispute that was raised at some point as to whether your billings were correct in the past and whether your current billing, the last one, was correct as well and that there were issues with respect to that? You all certainly had evidence to the contrary. But doesn't that create an issue as to whether the damages that were awarded were questions of fact for the jury as a whole? As opposed to something that there is no material issue of disputed fact about? No, because these aren't genuine disputes of material fact. As to whether your men did the work? These are subjective viewpoints of Mr. Russell, the proprietor of M.D. Russell Construction. And they were brought to the forefront at the end of this course of performance where the parties performed in a manner that – take overtime again, for example. It was included in every invoice up until the end. Every invoice was paid without question. It was not until the last one that all of these issues of overtime, inadequate work, having to go back and redo things, all of that – it's not – how would – I guess I would put it this way. Those are immaterial terms. The material term in this contract was that we were to provide labor. But a material term is also to accurately bill. And we contend it was. And there is no contention to the contrary until after the fact at the very end. Well, let's just assume for purposes of argument that the pay rate is an ambiguous term, which would then permit the use of parole evidence. Is there any bar to considering the parole evidence? In that circumstance, Your Honor, I'm not aware of a bar to parole evidence if the bill rate were an ambiguous term. I don't think that the bill rate, however, is. I understand that. If we concluded that it is ambiguous, then are you conceding that at least as to the breach of contract claim, we would have to send it back? No, because I believe if you introduce parole evidence, what you see is an inquiry about overtime and the language staying the same. Would that not all be for the trier of fact to determine in the first instance? Is any of that before us now? Come again, Your Honor? I'm sorry. Well, are you saying that the district court's opinion was based on parole evidence? No, I'm not saying that it was based on parole evidence, Your Honor. Well, then if we determine that the term is ambiguous, which would permit the introduction of parole evidence, wouldn't it of necessity require a remand so that the issue could be fleshed out by the trier of fact in the first instance? What I'm looking for is why wouldn't we do that? Well, it's there, even if you remanded it for that purpose. There is Ms. Creech and Mr. Russell engaged in back and forth conversation. I understand there's evidence there, but those aren't findings that the district court made, and we can't make findings. So I'm not sure in that circumstance that there's any other option but to remand, at least on that issue. So what I'm looking for is for you to tell us why that's not required. Why it would not be required to remand for consideration of parole evidence? Correct. Assuming we determined that the term of the contract was ambiguous. Well, because in the record, even if you made that determination, and you're doing a de novo review, in the record you have undisputed evidence that Ms. Creech did not have authority. The district court did not consider parole evidence. Specifically, it said that. That's correct. It did not. My point is, even if you do consider the parole evidence, the outcome is still the same. But we're not the trier of fact. How would we have authority to do that? We can't try the case in the first instance. To be the trier of fact, you have to have a genuine dispute of material fact. There's no dispute that Ms. Creech did not have the authority to introduce this phantom overtime issue into the contract, as MD Russell requested. So that authority had to come from somewhere else. It's in the record, very clearly in the 30B6 deposition testimony of my client, that that would have to come from Mr. Todd. Mr. Todd was the vice president. Doesn't that leave an ambiguity? Just the way Judge Gregory started, that there's nothing in there as to who pays overtime. No, I don't think that creates an ambiguity just because it's not there. It leaves an ambiguity. Again, the absence of something doesn't leave an ambiguity. Here again, payroll, regular time, overtime. Let me ask you about the attorney's fees. What have the North Carolina courts done as to whether North Carolina Statute 6-21.2 applies in contracts of this nature? My understanding here is that it would not apply, that statute would not apply to this contract because this is not a note for collection of a debt. Have North Carolina cases addressed this statute outside of notes, like in construction contracts? I'm not aware of cases that have construed it in this context, Your Honor. I thought your argument there was that the plaintiff waived the argument. Correct. That they waived the statutory bar because you had asked for it in the contract and they did not raise the issue. Right, the point is it's a contractual term. It's not what the statute would cover. Right? So that's exactly the point. It's a contractual term. Right, but that's not a question of whether the statute applies. It's a question of whether the plaintiff has waived the argument by not making it. Absolutely, Your Honor. If the plaintiff agreed to that term, then it would constitute a waiver. Time is up. Thank you, Mr. Hanson. Mr. Buckmiller, do you have anything further? Yes, Your Honors. Just to focus on the breach of contract where they granted summary judgment to the defendant on their breach of contract for $38,000. What is your client's position? Is the contract ambiguous? Yes. So where did you argue that down below? Well, we argued it when we said that it did not include, I want to make sure I get this right, that it did include overtime. Our position was that the contract included overtime based on previous discussions. But your position was the contract was clear. In fact, you saw summary judgment on that basis. Correct. So how can it be ambiguous yet clear? Well, Your Honor, I think it's a good question. I think times change. When I look at this contract, as we sit here in the appellate court, the contract does not say overtime either way. Right, but if you told, and I think you did, if you told the district court this is not an ambiguous term, what entitles you now to say it is ambiguous and we get to use parole evidence? Because I don't see you ever raise that argument below. We always raise that the contract included the pre-negotiation conversations. It wasn't just the express written contract. It was the pre-negotiation contracts where they had informed us that the contract included overtime, which is also included in the 30B6 deposition testimony. But you don't get to introduce that evidence absent an ambiguity, do you? For purposes of fraud or misrepresentations, we would, or a mutual mistake of fact. But for purposes of breach of contract, you don't get to introduce that evidence, do you? Correct. We cannot introduce evidence which varies or contradicts or adds to the terms of the contract. That's what the parole evidence rule provides. Just, Your Honor, while I've got some time, the evidence of the forged billing, Judge Agee asked about that. The evidence that we know that the work wasn't done was because we had to go back and finish the work ourselves. And that was in the record. As I mentioned before, the 30B6 testimony of the appellee said that the contract did include overtime. And with respect to these authority issues, we don't know. She never said she didn't have authority to tell us anything. And if we're looking at the actual fraud allegations, what I would put the court in tune to is appendix, Joint Appendix 2713 and 2732, which is the testimony of our client. And then there's also the affidavit of Naomi Ledbetter, 2580 through 2584, which discusses specifically the fraudulent misrepresentations which we allege induced us into entering into the contract. I would also note that CSI admitted that portions of the invoices were disputed when dealing with their own insurance company. And, again, we have this huge issue of an assignment of $25,000 of the $38,000 claim. And according to the 30B6 testimony of consolidated staffing, $25,000 of the claim was assigned to CoFACE. Judge Boyle just completely disregarded that. For my last points, I will just indicate that even if you were to apply Lex Loci to Chapter 75, the law of North Carolina would still apply. We are not in an antiquated society where our bank account and where we form our bank account is dispositive of where the injury occurs. Our bank account was BB&T, Truist. Truist is everywhere. Their bank account was Regence. Regence is everywhere in the southeast. And only the bank account damage issue is not the damages that are at point or at issue in this case. It's the forgery, which all took place in North Carolina. It's the repair work that we had to fix that all took place in North Carolina. So even under Lex Loci, we believe that the Chapter 75 law would be under North Carolina law. I'd like to ask one more question. Sure. I read the pages in 12 and 13. I think it's in the correct document. And I still don't see anywhere where you told the district court significant relationship test ought to apply. Here's why. So if I've read the wrong document and you want to submit a very short 28J letter that says look at this document on these pages, we'll read that. Because based on what I've read, it doesn't support your argument. Okay. Thank you, Your Honor. Whatever you want to do. All right. We'll come down to Greek Council and proceed to our final case for the day.
judges: Roger L. Gregory, G. Steven Agee, Robert S. Ballou